# EXHIBIT 1

IN THE CIRCUIT COURT OF THE 11TH
JUDICIAL CIRCUIT, IN AND FOR
MIAMI-DADE COUNTY, FLORIDA

CASE NO. 14-004294 CA 01

NEIMAN NIX and DNA SPORTS
PERFORMANCE LAB, INC., a Florida
corporation,

       Plaintiffs,

vs.

MAJOR LEAGUE BASEBALL, THE OFFICE
OF THE COMMISSIONER OF BASEBALL
d/b/a MAJOR LEAGUE BASEBALL, MAJOR
LEAGUE BASEBALL ENTERPRISES, INC.,
a New York corporation, MAJOR LEAGUE
BASEBALL PROPERTIES, INC., a New York
corporation, ALLAN H. SELIG a/k/a BUD SELIG,
GEORGE HANNA, DANIEL T. MULLIN
and AWILDA SANTANA,

       Defendants.

_____/

## VERIFIED COMPLAINT

       COMES NOW Plaintiffs, NEIMAN NIX ("NIX"), and DNA SPORTS PERFORMANCE

LAB, INC., a Florida corporation ("DNA"), by and through undersigned counsel, and brings

this, their action against Defendants, MAJOR LEAGUE BASEBALL, MAJOR LEAGUE

BASEBALL ENTERPRISES, INC., a New York corporation ("MLB Enterprises"), MAJOR

LEAGUE BASEBALL PROPERTIES, INC., a New York corporation ("MLB Properties"), THE

OFFICE OF THE COMMISSIONER OF BASEBALL (collectively, "MLB"), ALLAN H.

SELIG a/k/a BUD SELIG ("SELIG"), GEORGE HANNA ("HANNA"), DANIEL T. MULLIN

("MULLIN") and AWILDA SANTANA ("SANTANA"), and in support thereof state as follows:

CASE NO. 14-004294 CA 01

## NATURE OF THE SUIT

1.      Plaintiffs NIX and DNA bring this suit against Defendant MLB, its related corporate entities and four of its officers/employees, seeking:

(a) compensatory/treble damages, attorney's fees/costs and punitive damages, as appropriate, with respect to Defendants' violations of Fla. Stat. § 895.03 of the Florida Racketeer Influenced and Corrupt Organizations Act ("Florida RICO Act"), § 501.204 of the Florida Deceptive and Unfair Trade Practices Act ("FDUPTA") and § 772.103 of the Civil Remedies for Criminal Practices Act; for their defamation, slander of title and tortious interference with business and contractual relationships of both Plaintiffs; and for their intentional infliction of emotional distress as to Plaintiff NIX; and

(b) injunctive relief, asking the Court to enjoin the Defendants and all those acting on their behalf from directly or indirectly engaging in communications about the Plaintiffs with any member of the media or the public, if they know or reasonably should know that those communications are substantially likely to have a material prejudicial impact on this case, or with any potential witnesses in this case, solely with respect to the subject matter of this litigation, unless those communications occur on the record and in the presence of Plaintiff's counsel and/or the Court.

2.      In order to eliminate what Defendant MLB perceived as a rapidly growing threat to its business interests, the Defendants twice contacted virtually every one of NIX's professional and business contacts that they could track down around the globe, beginning the conversation with each individual by conveying the false impression that the caller was investigating NIX's

2

CASE NO. 14-004294 CA 01

due to using any of DNA's products.

98.     Nevertheless, on or around February, 2013, to NIX's great astonishment and chagrin, he discovered that the Defendants had begun making a second round of defamatory phone calls to the same people that they had slandered him to back in 2011, despite the fact that Defendants knew or should have known that: (a) no professional baseball player had ever been provided with any PES from DNA or NIX that was then banned or cautioned against by Defendant MLB, let alone tested positive for a PES, investigated and/or disciplined by Defendant MLB due to ingestion of a substance received from DNA and/or NIX; and (b) at all pertinent times thereto, neither NIX nor DNA had any contractual, legal or professional ties to Defendant MLB whatsoever.

99.     As with the first round of defamatory phone calls, NIX was advised by numerous witnesses that Defendants began each by giving the false impression that they were conducting a government investigation into NIX's conduct vis-à-vis Defendant MLB, then went on to slander NIX as being undoubtedly guilty of fraudulent and/or unethical business practices, including the illicit sale of "banned substances" to professional baseball players.

100.    As NIX discovered from speaking with some of these witnesses, this second round of defamation had a certain level of artificial credence and import with the individuals who Defendants relayed it to that was lacking in even the first round of slanderous phone calls; not only did the new allegations of fraudulent and/or illegal conduct echo the slander in the Defendants' first round of phone calls, but the Defendants also falsely characterized their new defamatory claims about NIX and DNA being involved in the sale of illicit PES to professional

30

CASE NO. 14-004294 CA 01

baseball players as being tied into their then-current doping investigation into Biogenesis and various other South Florida wellness clinics.

101.    Defendants knew or should have known that their fraudulent conflation of NIX and DNA with their purported investigation into Biogenesis and other South Florida clinics allegedly suspected of selling illicit PES would add a heightened level of ersatz credibility to the slanderous representations that they made about Plaintiffs during this second set of phone calls, as the professional baseball community had become aware through a January 26, 2013 ESPN.com news article entitled *MLB investigating region in PED war*, available online at http://espn.go.com/espn/print?id=8884955&type=story, a true and correct copy of which is attached hereto as Exhibit "F" (highlighted in pertinent part), that MLB was purportedly cooperating with the U.S. Drug Enforcement Administration in investigating other wellness clinics in the area, on the basis of their "belief" that those clinics involved in the same illicit conduct as Biogenesis.

102.    The fact of the matter is that, as the Defendants knew or should have known, neither NIX nor DNA had ever  sold or provided testosterone or human growth hormone to anyone, or provided banned PES to any professional baseball player, and so MLB did not even have a colorable basis to suspect them of engaging such actions sufficient to warrant including them in such an investigation.

     H.    **Investigation Reveals MLB to be Direct, Monopolistic Competitor of DNA**

103.    Although Plaintiffs initially believed that MLB conducted this second, follow-up slander campaign solely to ensure that Plaintiff NIX would have no chance of rehabilitating his

31

CASE NO. 14-004294 CA 01

unconscionable efforts to damage the Plaintiffs and other of MLB's nutritional supplement distribution competitors in the South Florida market **under the public guise of a drug investigation being conducted  in coordination with the government** - even after receiving his cease and desist letter, and despite knowing that  Plaintiffs were in fact innocent of any wrongdoing  – **it has become painfully clear to NIX that, absent judicial intervention, he will never be able to publicly clear his name, recover the tens of millions of dollars in current and future financial losses inflicted by the Defendants and/or prevent them from besmirching his name at will in the future.**

  I.  Extra Innings: MLB Engages in Post-Litigation Attacks against Plaintiffs

120.    Subsequent to the filing of the initial Verified Complaint in the above-captioned cause, the Defendants have renewed their defamatory assault on the Plaintiffs' reputation and business interests - only this time from a new angle.

121.    On or about the evening of March 12, 2014, Plaintiffs discovered that the usual webpage of DNA's corporate account on   http://wwww.youtube.com ("Youtube") – which, as of that afternoon, had contained fourteen promotional videos that were being actively utilized in Plaintiffs' online marketing efforts - had been replaced with a page containing the following statement: "This account has been terminated due to repeated or severe violations of our Community Guidelines and/or claims of copyright infringement."

122.    Additionally, direct links to the pages containing each of the videos, which were embedded in dozens, if not hundreds, of websites throughout the Internet, had each been replaced with a notification that the requested video was no longer available because the associated

41

CASE NO. 14-004294 CA 01

account had been terminated.

123.    Plaintiffs immediately sent a letter to Google, Inc. ("Google"), owner of Youtube, advising them that not only had they never received any prior warnings from Youtube about the content of the videos on DNA's channel, and that the videos themselves did not contain any subject matter whatsoever that could possibly constitute either a violation of Youtube's Community Guidelines or an infringement of any copyright claims.

124.    Nevertheless, however, despite that letter and other efforts over the following days, Google has as of yet failed to reinstate DNA's  account.

125.    Although Google has thus far failed to honor Plaintiff's requests in this matter, representatives of that company have subsequently provided oral confirmation of the reason for the abrupt termination, advising that:

(a)    Visitors to http://www.youtube.com ("Youtube") can electronically file a written complaint  ("Report") with Google about any video published on that website by an account holder simply by clicking the Flag icon placed underneath on the bottom right hand corner of each video;

(b)    Youtube's electronic moderator system is programmed to automatically terminate any account that receives a certain number of Reports sent via that system, without any human review of those Reports to confirm their validity;

(c)    Youtube's electronic moderator system had automatically terminated the account after receiving a sufficient number of Reports within a brief period of time; and

(d)    Youtube's logs showed that not only all of those Reports had been sent from the same I.P.

42

CASE NO. 14-004294 CA 01

Address, but that all of them claimed that DNA was associated with the scandal surrounding the Biogenesis clinic.

126.    Subsequently, on or about March 26, 2014 - two weeks to the day after DNA's Youtube account had been abruptly terminated – DNA's corporate Facebook account was also terminated without any prior warning.

127.    In response to inquiries made on behalf of Plaintiffs as to the reason for the termination, Facebook advised that they, too, have an electronic moderator system that is programmed to automatically take down an account upon the receipt of repeated complaints of a similar nature, and that it had been triggered in this instance by a series of duplicate complaints coming from the same IP address within a brief period of time; however, once the Facebook representative reviewed the complaints, they immediately reinstated the account, and noted that it was now flagged in order to prevent a recurrence of this malicious takedown in the future.

128.    As the clearly intended result of these libelous claims – which, upon information and belief, were published to Google and Youtube by and/or on behalf of the Defendants – Plaintiffs have suffered and continue to suffer grievous damage to their professional reputations and existing business relationships, in that **the numerous websites across the Internet that had previously embedded the videos published on Plaintiffs' Youtube account now leads viewers to a web page which falsely states that DNA's account had been terminated due to "repeated or severe violations" of that website's Community Guidelines and/or claims of copyright infringement.**

43

CASE NO. 14-004294 CA 01

**witnesses** in this case, solely with respect to the **subject matter of this litigation**, unless those communications occur on the record and in the presence of Plaintiff's counsel and/or the Court;

b)      **compensatory damages**, which Plaintiffs may recover as per Fla. Stat. § 501.111(2);

c)      **punitive damages**, which are warranted due to Defendants having intentionally engaged in the gross misconduct set forth herein, despite having actual knowledge of both its wrongfulness and the high probability that injury and/or damage to the Plaintiffs would result;

d)      **reasonable attorney's fees and costs**, pursuant to this Court's authority to grant same under Fla. Stat. §§ 501.2105 and 501.111(2); and

e)      any **other relief** that this Court may deem appropriate and just.

### COUNT IV
### DEFAMATION

162.    Plaintiffs DNA and NIX repeat and re-allege Paragraphs 1 through 116 of this Complaint as if fully set out in this Count, and further state as follows:

163.    At all times pertinent hereto, Defendants HANNA, MULLIN and SANTANA were employed by Defendant MLB (and, in the case of Defendant HANNA and MULLIN, were also officers and/or directors of Defendant MLB), and were acting in furtherance of their duties in those capacities.

164.    Over the course of two separate periods of time – first in or around October-December, 2011, and then again, in or around February-March, 2013 - acting at Defendant HANNA's direction and pursuant to his instructions, with actual malice, Defendants MULLIN and SANTANA called dozens of NIX's professional colleagues, employees, students and business associates under the false guise of conducting a government investigation into NIX's conduct vis-

57

CASE NO. 14-004294 CA 01

à-vis Defendant MLB, and and intentionally conveying the false impression to each that NIX had been and/or was still engaged in fraudulent, illegal and/or unethical business conduct.

165.    Additionally, during the second period of time, Defendants also maliciously slandered DNA by conveying the false impression to those same individuals that NIX, who has been DNA's president and sole officer/director since its formation, had engaged in fraudulent, illegal and/or unethical business conduct while running DNA.

166.    Defendants knew or reasonably should have known that at the time of those slanderous phone calls, all of which were made and/or directed to be made with actual malice, that as the direct, proximate and reasonably foreseeable consequences of those slanderous communications:

    a)    the individuals who Defendants contacted on both occasions terminated their professional dealings with NIX and/or DNA on a virtually immediate basis following Defendants' slanderous phone calls;

    b)  being unaware of the falsity of the information conveyed to them by the Defendants, those individuals caused Defendants' slander to spread rapidly throughout the professional baseball community, the members of which each terminated their own professional dealings with NIX and/or DNA on a virtually immediate basis subsequent to hearing Defendants' slander through the professional baseball grapevine; and

    c)    Plaintiffs' professional relationships and business interests were utterly destroyed along with NIX's prominent, stellar professional reputation.

167.    Furthermore, upon information and belief, on two separate occasions in March, 2014, Defendants repeatedly sent and/or caused to be sent a number of libelous emails about DNA to

CASE NO. 14-004294 CA 01

Youtube and Facebook, with the knowledge that those false statements would result in the automatic takedown of DNA's corporate pages on both accounts and termination/suspension of its accounts (and, in the case of Youtube, that its page would be replaced with one which falsely states that DNA's account had been terminated due to "repeated or severe violations" of that website's Community Guidelines and/or claims of copyright infringement).

168.    As a direct, proximate and reasonably foreseeable consequence of Defendants' defamation, Plaintiffs DNA and NIX have suffered tens of millions of dollars in damages, including, but not limited to past, present, and future loss of business contracts, income, profits, market value, opportunities, goodwill and professional relationships.

169.    As a direct, proximate and reasonably foreseeable consequence of Defendants' tortious interference, NIX has suffered and continues to suffer severe mental anguish, humiliation, and emotional distress.

        **WHEREFORE**, Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC., hereby respectfully seek:

a)      **compensatory damages**;

b)      **punitive damages**, due to Defendants having intentionally engaged in this gross misconduct despite having actual knowledge of both its wrongfulness and the high probability that injury and/or damage to the Plaintiffs would result; and

c)      **any other relief** deemed just and proper by the Court.

<u>**COUNT V**</u>
<u>**TRADE DEFAMATION**</u>

170.    Plaintiffs DNA and NIX repeat and re-allege Paragraphs 1 through 116 of this Complaint

59

CASE NO. 14-004294 CA 01

INC., hereby respectfully seek:

a)  **compensatory and special damages**;

b)  **punitive damages**, due to Defendants having intentionally engaged in this gross misconduct despite having actual knowledge of both its wrongfulness and the high probability that injury and/or damage to the Plaintiffs would result; and

c)  **any other relief** deemed just and proper by the Court.

**COUNT VI**
**TORTIOUS INTERFERENCE WITH**
**BUSINESS AND CONTRACTUAL RELATIONSHIPS**

177.    Plaintiffs DNA and NIX repeat and re-allege Paragraphs 1 through 116 of this Complaint as if fully set out in this Count, and further state as follows:

178.    At all times pertinent hereto, Defendants HANNA, MULLIN and SANTANA were employed by Defendant MLB (and, in the case of Defendant HANNA and MULLIN, were also officers and/or directors of Defendant MLB), and were acting in furtherance of their duties in those capacities.

179.    Over the course of two separate periods of time – first in or around October-December, 2011, and then again, in or around February-March, 2013 - acting at Defendant HANNA's direction and pursuant to his instructions, Defendants MULLIN and SANTANA tortiously interfered with NIX's existing and prospective business and contractual relationships by calling dozens of NIX's professional colleagues, employees, students and business associates under the false guise of conducting a government investigation into NIX's conduct vis-à-vis Defendant MLB, and conveying the false impression to each that NIX had engaged in fraudulent, illegal

and/or unethical business conduct.

180.    Additionally, during during the second period of time, Defendants intentionally injured Plaintiff DNA's existing and prospective business and contractual relationships through their malicious slander of NIX, who has been DNA's president and sole officer/director since its formation.

181.    Defendants knew or reasonably should have known that at the time of those slanderous phone calls, all of which were made and/or directed to be made with actual malice, that as the direct, proximate and reasonably foreseeable consequences of those slanderous communications:

    a)    the individuals who Defendants contacted on both occasions terminated their professional dealings with NIX and/or DNA on a virtually immediate basis following Defendants' slanderous phone calls;

    b)  being unaware of the falsity of the information conveyed to them by the Defendants, those individuals caused Defendants' slander to spread rapidly throughout the professional baseball community, the members of which each terminated their own professional dealings with NIX and/or DNA on a virtually immediate basis subsequent to hearing Defendants' slander through the professional baseball grapevine; and

    c)  Plaintiffs' professional relationships and business interests were utterly destroyed along with NIX's prominent, stellar professional reputation.

182.    Furthermore, upon information and belief, on two separate occasions in March, 2014, Defendants repeatedly sent and/or caused to be sent a number of libelous emails about DNA to Youtube and Facebook, with the knowledge that those false statements would result in the

63

automatic takedown of DNA's corporate pages on both accounts and termination/suspension of its accounts (and, in the case of Youtube, that its page would be replaced with one which falsely states that DNA's account had been terminated due to "repeated or severe violations" of that website's Community Guidelines and/or claims of copyright infringement).

183.    As a direct, proximate and reasonably foreseeable consequence of Defendants' tortious interference, Plaintiffs have suffered tens of millions of dollars in damages, including, but not limited to past, present, and future loss of business contracts, income, profits, market value, opportunities, goodwill and professional relationships.

        **WHEREFORE**, Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC., hereby respectfully seek:

a)      **compensatory damages**;

b)      **punitive damages**, due to Defendants having intentionally engaged in this gross misconduct despite having actual knowledge of both its wrongfulness and the high probability that injury and/or damage to the Plaintiffs would result; and

ᵐᵇ②    **any other relief** deemed just and proper by the Court.

**COUNT VII**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
(as to Plaintiff NIX)

184.    Plaintiff NIX repeats and re-allege Paragraphs 1 through 116 of this Complaint as if fully set out in this Count, and further state as follows:

185.    At all times pertinent hereto, Defendants HANNA, MULLIN and SANTANA were employed by Defendant MLB (and, in the case of Defendant HANNA and MULLIN, were also

CASE NO. 14-004294 CA 01

## **DEMAND FOR JURY TRIAL**

Plaintiffs, NEIMAN NIX and DNA SPORTS PERFORMANCE LAB, INC., hereby demand a jury trial on all issues raised in this Complaint so triable as a matter of right, pursuant to Rule 1.430(b) of the Florida Rules of Civil Procedure and Fla. Stat. § 51.011(3).

## **VERIFICATION**

Under penalty of perjury, I, NEIMAN NIX, declare that I have read the foregoing, and the facts alleged therein are true and correct to the best of my knowledge and belief.

*/Neiman Nix*
Neiman Nix, Plaintiff

Respectfully submitted,
Law Offices of Sholom Boyer, P.A.
2221 NE 164th Street, Suite 1244
N. Miami Beach, Florida 33160
Phone: (786) 366-2779
Fax:     (786) 664-6537
E-mail: sholom@boyerlawoffice.com

Sholom Boyer, Esq.
Fla. Bar No. 523445

Dated: April 14, 2014

69