UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



NEIMAN NIX, *et al.*,

                Plaintiffs,

-v-

OFFICE OF THE COMMISSIONER OF
BASEBALL, d/b/a MAJOR LEAGUE
BASEBALL, *et al.*,

                Defendants.

No. 17-cv-1241 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

      On November 9, 2016, Plaintiffs Neiman Nix ("Nix") and DNA Sports Performance Lab, Inc. ("DNA Lab") commenced this action in the New York State Supreme Court, New York County, alleging that Defendants – the Office of the Commissioner of Baseball, doing business as Major League Baseball ("Major League Baseball" or "MLB"), Robert D. Manfred, Allen H. Selig, Neil Boland, and Awilda Santana – violated the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 and engaged in tortious interference with economic advantage and defamation. (Doc. No. 1-1 ("Compl.").) On February 17, 2017, Defendants removed the case to this Court. (Doc. No. 1.) Now before the Court are Plaintiffs' motions: (1) for leave to voluntarily dismiss their CFAA claim, and (2) to remand this action to the New York State Supreme Court pursuant to 28 U.S.C. § 1447. (Doc. No. 13.) For the reasons set forth below, the motions are GRANTED.

I. Background[1]

Nix, a current resident of Texas, played professional baseball within the Milwaukee Brewers and Cincinnati Reds organizations until 2003. (Compl. ¶¶ 1, 9.) In 2006, Nix founded the American Baseball Institute ("ABI"), a player development academy based in Clearwater, Florida. (*Id.* ¶¶ 13–14, 16.) Plaintiffs aver that in 2011, Defendant Awilda Santana, an MLB investigator, contacted players, coaches, and "other members of ABI and the baseball community" and falsely accused Nix of "misrepresenting" himself and certain ABI affiliates as "MLB scouts" and "agents" and "running fake tryouts." (*Id.* ¶¶ 19–20.) According to Nix, these "rumors" damaged his reputation and resulted in the departure of several players from ABI and the diminution of ABI's value as an enterprise. (*Id.* ¶¶ 28, 32.) In 2012, Nix established DNA Lab, a Florida corporation headquartered in Miami Beach, Florida that Nix describes as "a state of the art sports science testing facility." (*Id.* ¶¶ 2, 40.) Although Nix insists that he "never sold testosterone or anabolic steroids" to clients, he alleges that MLB investigators again made false accusations that he sold to players performance-enhancing drugs that had been banned by the MLB. (*Id.* ¶¶ 54, 57, 64.)

On February 18, 2014, Plaintiffs filed a complaint against Defendants in Florida state court. (*Id.* ¶ 77.) Soon after, Defendants allegedly "began hacking/attacking" the DNA Sports Lab's social media accounts, which "severely disrupt[ed] Nix's ability to do business." (*Id.* ¶ 79.) Plaintiffs also insist that Defendants "hacked into and destroyed" his former attorney's computer in retaliation for filing the complaint. (*Id.* ¶ 80.)

---

[1] Unless otherwise noted, the following facts are taken from the state-court complaint. (Doc. No. 1-1.) For purposes of the instant motion, all non-jurisdictional facts alleged in the Complaint are presumed to be true. *See Hyatt Corp. v. Stanton*, 945 F. Supp. 675, 677 (S.D.N.Y. 1996). The Court has also considered Plaintiffs' declaration in support of remand (Doc. No. 13), Defendants' opposing brief and declaration (Doc. Nos. 15 ("Opp'n"), 16), and Plaintiffs' reply (Doc. No. 18).

2

After amending the Florida complaint, Plaintiffs missed several initial case management conferences and failed to perfect service for 261 days. On November 6, 2014, the Honorable John W. Thornton, Jr., of the Eleventh Judicial Circuit of Florida, dismissed the case for failure to prosecute in light of Plaintiffs' non-compliance with several court orders and failure to perfect service. (Doc. No. 16-3.) Although Plaintiffs appealed that decision on December 5, 2014 (Doc. No. 16-4), they voluntarily withdrew the appeal on April 24, 2015 (Doc. No. 16-5).

On July 14, 2016, Nix and DNA Lab filed a separate suit in this District against the same defendants named here, alleging tortious interference with prospective economic advantage and defamation and invoking diversity jurisdiction under 28 U.S.C. § 1332. *See* Complaint, *Nix v. Office of the Comm'r of Baseball*, No. 16-cv-5604 (ALC) (S.D.N.Y. July 14, 2016). On October 19, 2016, the defendants in that case filed a pre-motion letter regarding their contemplated motions for dismissal pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and sanctions under Rule 11 of the Federal Rules of Civil Procedure. *Id.* at Doc. No. 10. After Judge Carter, to whom that case had been assigned, held a brief pre-motion conference on October 27, 2016, Plaintiffs filed a motion for voluntary dismissal without prejudice pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure on November 3, 2016. *Id.* at Doc. Nos. 13, 14.

On November 9, 2016, Plaintiffs filed the instant suit against Defendants, this time in New York Supreme Court, alleging tortious interference with business relations, defamation, and violations of the CFAA. (Doc. No. 1-1.) On February 17, 2017, Defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a), asserting that this Court had: (1) original jurisdiction pursuant to the 28 U.S.C. § 1331 over Plaintiffs' CFAA claim, and (2) supplemental jurisdiction over Plaintiffs' state law tort claims pursuant to 28 U.S.C. § 1367. (Doc. No. 1.) On February 27, 2017, the case was assigned to my docket. That same day, the Court issued an order directing

Plaintiffs, no later than March 29, 2017, to file either: (1) a motion to remand, pursuant to 28 U.S.C. § 1447(c), or (2) an amended complaint conforming to the pleading standards under Rule 8 of the Federal Rules of Civil Procedure. (Doc. No. 6.) On March 29, 2017, Plaintiffs moved to voluntarily dismiss their CFAA claim and remand this case to New York State Supreme Court pursuant to 28 U.S.C. § 1447. (Doc. No. 13.) On April 12, 2017, Defendants filed their opposition brief and declaration. (Doc. Nos. 15, 16.) The motion was fully briefed on April 19, 2017, when Plaintiffs submitted their reply. (Doc. No. 18.)

## II. DISCUSSION

### A. Dismissal Under Rule 41

Plaintiffs have submitted a proposed stipulation voluntarily dismissing their CFAA claim with prejudice and without costs to any party pursuant to Rule 41(a)(1)(A)(ii). (Doc. No. 13-4.) Under that provision, "the plaintiff may dismiss an action without a court order by filing a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(ii); (*see also* Doc. No. 13-4). Since Defendants have not yet joined that stipulation, it has no legal effect. Nevertheless, Plaintiffs have also requested leave to voluntarily dismiss their CFAA claim pursuant to Rule 41(a)(2), which allows a court to grant a motion to voluntarily dismiss a complaint or cause of action "upon such terms and conditions as the court deems proper." *Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001) (quoting Fed. R. Civ. P. 41(a)(2)). Of course, "[v]oluntary dismissal *without prejudice* is . . . not a matter of right," *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990) (emphasis added), and before granting dismissal under Rule 41(a)(2), a court must "evaluat[e] whether substantial prejudice would result from a dismissal without prejudice," *S.E.C. v. Chakrapani*, No. 09-cv-1043 (RJS), 2010 WL 2605819, at *2 (S.D.N.Y. June 29, 2010); *accord Kwan v. Schlein,* 634 F.3d 224, 230 (2d Cir. 2011). Even so, "courts have generally subjected motions for voluntary dismissal *with* prejudice to far less scrutiny," *Commercial*

4

*Recovery Corp. v. Bilateral Credit Corp., LLC*, No. 12-cv-5287 (CM), 2013 WL 8350184, at *5 (S.D.N.Y. Dec. 19, 2013), although the Court must still inquire as to whether the voluntary dismissal "will be unduly prejudicial to the defendants," *Lan v. Time Warner, Inc.*, No. 11-cv-2870 (AT) (JCF), 2016 WL 6778180, at *6 (S.D.N.Y. Oct. 18, 2016), *report and recommendation adopted*, 2016 WL 6779526 (S.D.N.Y. Nov. 15, 2016) (citation omitted); *accord Lakah v. UBS AG*, No. 07-cv-2799 (LAP), 2016 WL 4257527, at *6 (S.D.N.Y. July 29, 2016).

Here, Plaintiffs are willing to dismiss their CFAA claim with prejudice (Doc. No. 13-4), and Defendants have not even attempted to articulate any harms they will suffer as a result of such a dismissal of the CFAA claim (*see* Doc. No. 15). And even though, as discussed in the next section, the dismissal of the CFAA claim will result in remanding this case to state court, "nearly all courts grant" dismissal under Rule 41(a)(2) "when defendant's only argument against dismissal is that the plaintiff manifestly seeks to defeat federal jurisdiction." *Katzman v. Am. Airlines, Inc.*, No. 97-cv-8321 (JSM), 1997 WL 752730, at *1 (S.D.N.Y. Dec. 4, 1997) (collecting cases). Put simply, "[c]ourts have uniformly held that defendants are not prejudiced under Rule 41(a)(2) by having to face trial in state court." *Id.* Accordingly, the Court dismisses Plaintiffs' CFAA claim with prejudice and without costs.[2]

---

[2] Although some decisions within this Circuit suggest that Rule 41(a) may only be employed to dismiss an "entire controversy," *Harvey Aluminum, Inc. v. Am.Cyanamid Co.*, 203 F.2d 105, 108 (2d Cir. 1953), more recent cases make clear that Rule 41(a) "permit[s] the withdrawal of individual claims," *Azkour v. Haouzi*, No. 11-cv-5780 (RJS) (KNF), 2013 WL 3972462, at *3 (S.D.N.Y. Aug. 1, 2013) (collecting cases); *see also Wakefield v. N. Telecom, Inc.*, 769 F.2d 109, 114 n.4 (2d Cir. 1985) (suggesting that *Harvey Aluminum* is mere dicta). And while it might be argued that "a motion to eliminate only certain claims" is more properly brought as a motion to amend under Rule 15 rather than a motion for voluntary dismissal under Rule 41(a), "there is no substantive difference between the two," since the operative consideration under both rules is whether defendant will be "prejudiced." *Seidman v. Chobani, LLC*, No. 14-cv-4050 (PGG), 2016 WL 1271066, at *2 (S.D.N.Y. Mar. 29, 2016) (citations omitted). Thus, the Court finds that Plaintiffs' invocation of Rule 41(a) to dismiss only their CFAA claim – as opposed to their entire complaint – is permissible.

B. Remand

The Court next turns to Plaintiffs' motion to remand. A civil action brought in state court may be removed to a federal district court "only if it could have originally been commenced in federal court on either the basis of federal question jurisdiction or diversity jurisdiction." *Philip v. Deutsche Bank Nat. Tr. Co.*, No. 11-cv-8960 (PGG), 2012 WL 2354242, at *2 (S.D.N.Y. June 20, 2012) (quoting *Audi of Smithtown, Inc. v. Volkswagen of Am., Inc.*, No. 08-cv-1773 (JFB) (AKT), 2009 WL 385541, at *3 (E.D.N.Y. Feb. 11, 2009) and citing 28 U.S.C. § 1441(a)). If a case is removed and a federal district court determines that it lacks jurisdiction over the matter, it must be remanded. *See* 28 U.S.C. § 1447. When challenged, the party seeking removal bears the burden of establishing that the federal district court has jurisdiction. *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d 321, 327 (2d Cir. 2011).

Where, as here, a plaintiff's only federal claims have been dismissed, the Court has discretion to maintain jurisdiction over any pendent state law claims. *See Mizuna, Ltd. v. Crossland Fed. Sav. Bank*, 90 F.3d 650, 657 (2d Cir. 1996). However, the Supreme Court and Second Circuit have instructed that in "the usual case in which all federal-law claims are eliminated before trial . . . the balance of factors to be considered" by the district court – "judicial economy, convenience, fairness, and comity [–] will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 119 (2d Cir. 2006) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)); *accord Motorola Credit Corp. v. Uzan*, 388 F.3d 39, 56 (2d Cir. 2004) ("[O]ur Court has held, as a general proposition, that 'if [all] federal claims are dismissed *before trial* . . ., the state claims should be dismissed as well.'" (quoting *Castellano v. Bd. of Trs.*, 937 F.2d 752, 758 (2d Cir. 1991)).

Here, the Court has dismissed Plaintiffs' only federal claim with prejudice long before "the investment of significant judicial resources" – that is, long before any conferences before this

6

Court, motion practice under Rule 12, or discovery. *Kolari*, 455 F.3d 123. Thus, there is "no indication that . . . judicial economy . . . would be advanced by the Court's exercise of supplemental jurisdiction." *Moran v. Tryax Realty Mgmt., Inc.*, No. 15-cv-8570 (RJS), 2016 WL 3023326, at *4 (S.D.N.Y. May 23, 2016) (quoting *Fixed Income Shares: Series M v. Citibank N.A.*, 130 F. Supp. 3d 842, 853 (S.D.N.Y. 2015)). Indeed, courts in this Circuit generally grant motions to remand where, as here, a plaintiff voluntarily dismisses all of its federal claims prior to the beginning of discovery. *See Manginelli v. Homeward Residential, Inc.*, No. 13-cv-2334 (SJF) (AKT), 2013 WL 6493505, at *7 (E.D.N.Y. Dec. 9, 2013) (granting motion to remand "[i]n light of the withdrawal of all federal claims in this action prior to any court appearance, dispositive motion or discovery . . ."); *Goonewardena v. AMR Corp.*, No. 08-cv-4141 (NGG), 2008 WL 5049904, at *3 (E.D.N.Y. Nov. 25, 2008) (granting motion to remand where plaintiff "withdrew his single federal claim very early on [in] this litigation"); *Arthur Glick Truck Sales, Inc. v. H.O. Penn Mach. Co.*, 332 F. Supp. 2d 584, 586 (S.D.N.Y. 2004) (remanding case to state court where plaintiffs "abandoned their sole federal claim before the Court decided" motions for a preliminary injunction and to dismiss). Furthermore, the Court "can discern no extraordinary inconvenience or inequity occasioned by permitting" Plaintiffs to bring their claims across the street in the New York State Supreme Court, "where they will be afforded a 'surer-footed reading of applicable law.'" *Kolari*, 455 F.3d at 123–24 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). The fact that Plaintiffs' defamation and tortious interference claims do not implicate "novel" issues of state law, as Defendants underscore (Opp'n 16), is relevant to the Court's inquiry, *see Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 307 (2d Cir. 2003), but it is not dispositive, *see MHS Capital v. Goggin*, No. 16-cv-1794 (VM), 2016 WL 3522198, at *4 (S.D.N.Y. June 13, 2016) (finding that even where, as here, "the state law claims . . . are not complex or unsettled, considerations of fairness and comity" nonetheless "favor" remand).

In their opposition brief, Defendants urge the Court to retain jurisdiction because "Plaintiffs are clearly and intentionally attempting to engage in forum manipulation, to again delay the adjudication of their claims and avoid an unfavorable decision in this Court." (Opp'n 16–17 (citing *Payne v. Parkchester N. Condominiums*, 134 F. Supp. 2d 582, 586 (S.D.N.Y. 2001).) Defendants note that Plaintiffs "plainly knew they were advancing a federal claim and risked removal" in state court, and Defendants insist that Plaintiffs are shifting forums once again in a vain attempt to delay the dismissal with prejudice of their remaining claims, either for: (1) failure to state a claim upon which relief can be granted, or (2) dismissal on preclusion grounds under Rule 41(a)(1)(B), which provides that "if [a] plaintiff previously dismissed any federal- or state-court action based on or including the same claim, a notice of dismissal operates as an adjudication on the merits." Fed. R. Civ. P. 41(a)(1)(B). (Opp'n 17.) Indeed, as the Supreme Court observed in *Cohill*, "[i]f the plaintiff has attempted to manipulate the forum, the court should take this behavior into account in determining whether the balance of factors to be considered under the pendent jurisdiction doctrine support a remand in the case." 484 U.S. at 357.

Nevertheless, the Supreme Court has never held that such "manipulation ought to be dispositive." *Spehar v. Fuchs*, No. 02-cv-9352 (CM), 2003 WL 23353308, at *10 (S.D.N.Y. June 18, 2003). To the contrary, as Justice Holmes once wrote for a unanimous Supreme Court, "the plaintiff is absolute master of what jurisdiction he will appeal to" in our federal system. *Healy v. Sea Gull Specialty Co.*, 237 U.S. 479, 480 (1915); *accord United States v. Mottaz*, 476 U.S. 834, 850 (1986). Thus, courts generally grant motions to remand where, as here, a plaintiff has voluntarily dismissed his federal claims prior to the start of discovery, even when his "manifest purpose" in doing so "is to defeat federal jurisdiction." *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 12-cv-8579 (RWS), 2013 WL 3863887, at *4 (S.D.N.Y. July 24, 2013) (internal quotation marks and alterations omitted); *Spehar*, 2003 WL 23353308, at *10 (granting motion to

remand, notwithstanding the fact that the "circumstances . . . clearly suggest[ed] that plaintiffs are playing games to avoid appearing in federal court"); *see also Certilman v. Becker*, 807 F. Supp. 307, 309–10 (S.D.N.Y. 1992) ("[T]he Court is not convinced that merely omitting a federal law claim from [a] Proposed Amended Complaint . . . is a sufficient basis not to grant an otherwise proper remand to state court."). Admittedly, there is some tension between these holdings and Judge Knapp's decision in *Payne*, which is Defendants' leading authority. But that case – which is, of course, not binding on this Court – is also readily distinguishable. In *Payne*, "plaintiffs waited over seven *months* to file for remand," after the parties had already conducted discovery and the Court had held multiple pre-motion conferences. 134 F. Supp. 2d at 587. Understandably, Judge Knapp found that the *Cohill* factors favored retention of jurisdiction, since "remand would postpone the litigation, waste judicial resources, and perhaps cause inconsistencies in discovery procedure" and "defendants would suffer appreciable prejudice and inconvenience" from having to refile their contemplated summary judgment motion before a judge less well versed in the facts of the case. *Id.* Here, by contrast, Plaintiffs "filed [their] motion to remand promptly, before any discovery had been conducted and indeed before an initial pretrial conference had been held." *Maguire v. A.C. & S., Inc.*, No. 14-cv-7578 (PAE), 2015 WL 4934445, at *5 (S.D.N.Y. Aug. 18, 2015) (similarly distinguishing *Payne* and granting motion to remand); *Spehar*, 2003 WL 23353308, at *11 (likewise distinguishing *Payne*, since "[p]laintiffs moved for leave to amend and remand immediately after removal," no answer had been filed, "no discovery ha[d] taken place," and no party had submitted substantive motions). And while Plaintiffs also rely on the Second Circuit's decision affirming the denial of remand in *Mizuna*, that case is similarly distinguishable since the parties there had already engaged in discovery, court conferences, and substantive motions. 90 F.3d at 657 (affirming denial of remand motion where "three judicial officers had already expended substantial resources on the case over a year's time[,] an order had issued that

contemplated an imminent resolution," and "returning the case to state court would facilitate [plaintiff's] fairly bald effort to avoid an unfavorable outcome that the court had already foreshadowed" in the court's rulings, notwithstanding the fact that the Court no longer had original jurisdiction over any claims).[3]

Defendants also insist that remand is inappropriate in light of the fact that Plaintiffs have "wasted" the time of judges in three separate courts. (Opp'n 18.) But while Plaintiffs' failure to prosecute and their general inattentiveness to jurisdictional issues in other cases are very troubling, the fact remains that where, as here, all federal claims have been dismissed before the Court has overseen any discovery or resolved any substantive motions, "the balance of factors to be considered" by the Court – "judicial economy, convenience, fairness, and comity" – favor declining the exercise of supplemental jurisdiction over the remaining claims. *Kolari*, 455 F.3d at 119. Therefore, because the Court declines to exercise supplemental jurisdiction, and because there are no remaining bases for exercising federal jurisdiction in this case,[4] the Court remands this case to New York State Supreme Court.

---

[3] Although *Mizuna* is still good law with respect to the precise facts of that case, the Second Circuit has "*repeatedly*" emphasized in the decades following *Mizuna* that "'if a plaintiff's federal claims are dismissed before trial, the state law claims should be dismissed as well.'" *Oneida Indian Nation of N.Y. v. Madison Cty.*, 665 F.3d 408, 437, 439–40 (2d Cir. 2011) (emphasis added) (quoting *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010)). Thus, the law is clear that a district court's discretion to retain supplemental jurisdiction over state claims following pre-trial dismissal of federal claims is extraordinarily limited. *See, e.g.*, *Eisner v. Cardozo*, No. 16-cv-872, _ F. App'x _, _, 2017 WL 1103437, at *3 (2d Cir. Mar. 24, 2017).

[4] As Defendants acknowledge, the exercise of diversity jurisdiction is not warranted under 28 U.S.C. § 1332(a). This is because Major League Baseball is an unincorporated association whose members consist of thirty teams (Doc. No. 1-1 ¶ 3), and "the citizenship of an unincorporated association . . . is determined by the citizenship of *each* of its members," *United Food & Commercial Workers Union v. CenterMark Props. Meriden Square, Inc.*, 30 F.3d 298, 302 (2d Cir. 1994). Thus, Major League Baseball is a citizen of Texas – like Plaintiff Nix – due to the fact that the Houston Astros and Texas Rangers are citizens of Texas, and is a citizen of Florida – like Plaintiff DNA Lab – since the Miami Marlins and Tampa Bay Rays are citizens of Florida. *See Rose v. Giamatti*, 721 F. Supp. 906, 913 (S.D. Ohio 1989) (explaining that Major League Baseball is a citizen of Ohio because the "Cincinnati Reds Baseball Club" is a "citizen of Ohio").

IV. CONCLUSION

For the reasons set forth above, IT IS HEREBY ORDERED that Plaintiffs' claim under the CFAA is dismissed with prejudice, and the remaining claims are remanded to the New York State Supreme Court. The Clerk is respectfully directed to: (1) terminate the motion pending at docket number 13, (2) remand this action to New York State Supreme Court, New York County, and (3) close this case.

SO ORDERED.

Dated: July 6, 2017
New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE