UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
:
:
:
NEIMAN NIX and DNA SPORTS PERFORMANCE :
LAB, INC., :
:
:
Plaintiffs, : Case No.: 1:17-cv-1241-RJS
:
:
v. :
:
MAJOR LEAGUE BASEBALL, OFFICE OF THE :
COMMISSIONER OF BASEBALL, D/B/A MAJOR :
LEAGUE BASEBALL, ROBERT D. MANFRED, :
JR., ALLAN H. "BUD" SELIG, NEIL BOLAND, :
and AWILDA SANTANA, :
:
Defendants. :
:
:
------------------------------------------------------- x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO
<u>PERMANENTLY ENJOIN PLAINTIFFS' STATE COURT LITIGATION</u>**

KOBRE & KIM LLP
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220

*Attorneys for Major League Baseball, Office of the Commissioner of Baseball, d/b/a Major League Baseball, Robert D. Manfred, Jr., Allan H. "Bud" Selig, Neil Boland, and Awilda Santana*

New York, New York
April 17, 2020

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I.  The Parties ............................................................................................................ 2

    II.  *First Nix Action:* Plaintiffs File Their First Complaint Against MLB in Florida, then Voluntarily Dismiss the Action ............................................................................. 3

    III. *Second Nix Action:* Plaintiffs File Another Complaint Based on the Same Facts in New York Federal Court, then Voluntarily Dismiss the Complaint ............................. 4

    IV. *Third Nix Action:* Plaintiffs File Yet Another Complaint Based on the Same Facts in New York State Court; After Removal to Federal Court, this Court Dismisses Plaintiffs' CFAA Claim with Prejudice ........................................................................ 4

    V.  *Fourth Nix Action:* Nix Sues 20 MLB Clubs for MLB's alleged "Hacking" of Plaintiffs' Online Accounts, then Voluntarily Dismisses His "Hacking" Claims ........ 5

    VI. *Fifth Nix Action:* Plaintiffs File the Florida Lawsuit Based on the Same Alleged "Hacking" of their Online Accounts ............................................................................. 6

ARGUMENT ................................................................................................................... 8

    I.  The Court may enjoin the Florida Lawsuit to protect its prior binding judgment. .. 8

    II.  The balance of the equities weighs strongly in favor of a permanent injunction to prevent further prosecution of Plaintiffs' vexatious and harassing litigation. ............ 11

        a.  The interests of equity and comity support an injunction against Plaintiffs. ... 11

        b.  Plaintiffs' long history of frivolous litigation supports an injunction. .............. 13

CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Cases**

*Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
  770 F.2d 328 (2d Cir. 1985) ................................................................................................ 11

*Brooks v. Barbour Energy Corp.*, 804 F.2d 1144 (10th Cir. 1986) ................................................ 9

*Browning Debenture Holders' Comm. v. DASA Corp.*,
  605 F.2d 35 (2d Cir. 1978) ................................................................................................... 12

*Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988) ................................................................ 8

*Covanta Onondaga Ltd. v. Onandaga County Resource Recovery Agency*,
  318 F.3d 392 (2d Cir. 2003) ................................................................................................. 13

*Fitzgerald v. Alleghany Corp.*, 882 F. Supp. 1433 (S.D.N.Y. 1995) .............................................. 9

*Hutton Const. Co., Inc. v. County of Rockland*,
  Nos. 87 Civ. 4027, 93 Civ. 2465, 1997 WL 291954 (S.D.N.Y. June 2, 1997) ........................ 9

*In re Rezulin Prods. Liab. Litig.*, 223 F.R.D. 109 (S.D.N.Y. 2004) ............................................... 9

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
  No. 12 Civ. 9350 (NRB), 2017 WL 6403087 (S.D.N.Y. Nov. 16, 2017) .............................. 11

*Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*,
  500 F.3d 111 (2d Cir. 2007) ............................................................................................ 8, 12

*Neiman Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball, et al.*,
  No. 14-004294-CA-01 (Fla. 11th Cir. Ct. Apr. 14, 2014) ...................................................... 3

*Neiman Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball, et al.*,
  No. 2019-002611-CA-01 (Fla. 11th Cir. Ct. June 20, 2019) .......................................... 2, 6, 7

*Neiman Nix et al, v. Major League Baseball et al.*,
  No. 16-cv-5604 (S.D.N.Y. Sept. 1, 2016) .............................................................................. 4

*Neiman Nix, et al. v. Major League Baseball, et al.*,
  Case No. 159953/2016, 2018 WL 6838756 (NY Sup. Ct., Dec. 31, 2018) ...................... 5, 14

*Nemaizer v. Baker*, 793 F.2d 58 (2d Cir. 1986) ............................................................................. 9

*Nix v. Luhnow, et al.*, No. 18-003920-CA-50 (Fla. 15th Cir. Ct. Dec. 7, 2018) ............................ 6

*Smith v. Bayer Corp.*, 564 U.S. 299 (2011) ................................................................................... 8

*Smith v. Woosley*, 399 F.3d 428 (2d Cir. 2005) ................................................................ 8, 9, 10

*Waldman v. Village of Kiryas Joel*, 207 F.3d 105 (2d Cir. 2000) .................................................. 10

*Wyly v. Weiss*, 697 F.3d 131 (2d Cir. 2012) ............................................................................ 11, 12

**Statutes**

18 U.S.C. § 1030............................................................................................................................. 4

28 U.S.C. § 2283............................................................................................................................. 8

**Other Authorities**

Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367 (3d ed. 2019) ... 9

**Rules**

Fed. R. Civ. P. 41(a)(2)................................................................................................................. 11

Defendants Major League Baseball, the Office of the Commissioner of Baseball, d/b/a Major League Baseball ("MLB"), Robert D. Manfred, Jr., Allan H. "Bud" Selig, Neil Boland, and Awilda Santana (collectively, "Defendants") submit this memorandum of law in support of their motion to permanently enjoin Plaintiffs Neiman Nix ("Nix") and DNA Sports Performance Lab, Inc. ("DNA Sports Lab") (collectively, "Plaintiffs") from further litigating their frivolous lawsuit in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.[1]

## PRELIMINARY STATEMENT

Plaintiff Neiman Nix is a vexatious litigant who has sued MLB and its affiliates, including its current and former employees, with and without counsel *five times* over the past six years on essentially the same claims. After seeking maximum media coverage of his outrageous frivolous claims against MLB, Nix has repeatedly filed suit—and lost. To date, his claims against MLB and others have been dismissed—both voluntarily and by the courts—in Florida state, Florida federal, New York state and New York federal court. Nix and some of his rotation of constantly-changing attorneys have been sanctioned over $40,000 and admonished by several courts—including this one—for misconduct. Yet he persists.

Most recently, Nix filed his *fifth* related frivolous lawsuit against MLB and its current and former employees in Florida state court (the "Florida Lawsuit") alleging that MLB and its employees "hacked" his PayPal, Facebook and YouTube accounts. In 2017, this Court dismissed a Computer Fraud and Abuse Act ("CFAA") claim based on this exact same conduct *with prejudice.*

The Florida Lawsuit is an impermissible collateral attack on this Court's prior order

---

[1] If The Honorable Judge Richard J. Sullivan, United States Court of Appeals for the Second Circuit, will be presiding over this motion, upon request we will file a letter with the Court per Rule 2.A. of Judge Sullivan's Individual Rules and Practices.

1

because it merely repackages the CFAA claim this Court dismissed. This Court should use its authority to protect the integrity of its binding judgment. Under the relitigation exception to the Anti-Injunction Act, this Court may permanently enjoin duplicative state litigation of a claim that it previously adjudicated. The balance of equities and the interests of comity weigh strongly in favor of the issuance of an injunction here. This Court is best-positioned to efficiently evaluate the effect of its own binding judgment, especially given the impact of the COVID-19 crisis on Florida's overburdened state courts. The frivolous nature of the Florida Lawsuit, combined with Plaintiffs' long history of frivolous litigation, further supports the issuance of an injunction against Plaintiffs. This Court should permanently enjoin Plaintiffs' blatant attempt to circumvent this Court's prior binding order.

## BACKGROUND

### I. The Parties

As recounted in the Court's July 6, 2017 Order, Nix is a former professional baseball player who played with the Milwaukee Brewers and Cincinnati Reds until 2003. Dkt. 1-1 (Compl.) at ¶ 9. Nix established DNA Sports Lab in 2012 as a Florida corporation in Miami Beach, Florida. *Id* at ¶ 40.

As alleged in Plaintiffs' complaint, Defendant MLB is an office created pursuant to the Major League Agreement entered into by the 30 major league baseball clubs. *Id* at ¶¶ 3–4. Defendant Robert D. Manfred, Jr. is the current Commissioner of Baseball, who served as the Chief Operating Officer of MLB from 2012 until 2015. *Id.* at ¶ 5. Defendant Allan H. "Bud" Selig is the former Commissioner of Baseball, who served as the Commissioner from 1998 to January 2015. *Id.* at ¶ 6. According to the complaint, Defendant Neil Boland is MLB's Vice President of Information Security. According to the complaint, Defendant Awilda Santana is an investigator employed by MLB's Department of Investigation. *Id.* at ¶ 8. Ricardo Burnham, a named defendant

in the Florida Lawsuit, is also an MLB employee. Kobre Decl., **Ex. A**, at ¶ 7 (Amended Complaint, *Neiman Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball, et al.*, No. 2019-002611-CA-01 (Fla. 11th Cir. Ct. June 20, 2019)).

## II.     *First Nix Action:* Plaintiffs File Their First Complaint Against MLB in Florida, then Voluntarily Dismiss the Action

In February 2014, Nix and DNA Sports Lab filed a verified complaint in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County against MLB, several affiliated entities, and several MLB employees for a slew of torts, including tortious interference and slander, for MLB's alleged investigation of DNA Sports Lab for selling banned substances to MLB players. On April 14, 2014, Plaintiffs filed an amended complaint, alleging that MLB interfered with Plaintiffs' online accounts in retaliation for their February 2014 filing. Kobre Decl., **Ex. B** (Verified Complaint, *Neiman Nix and DNA Sports Performance Lab, Inc. v. Major League Baseball, et al.*, No. 14-004294-CA-01 (Fla. 11th Cir. Ct. Apr. 14, 2014), at ¶¶ 120–128) ("MLB Engages in Post-Litigation Attacks against Plaintiffs"). Plaintiffs alleged an "assault on the Plaintiffs' reputation and business interests" perpetrated by MLB's "malicious takedown" of DNA Sports Lab's corporate YouTube and Facebook accounts. *Id.*

The Court eventually dismissed the action, noting "The Court's patience is at an end. Plaintiffs have had, as of today, **TWO HUNDRED SIXTY ONE (261) DAYS to perfect service in this case. At no time has a summons in this case ever been issued**." Dkt. 16-3 at 3 (emphasis in original). Plaintiffs filed a Notice of Appeal, but nearly five months later, in April 2015, Plaintiffs voluntarily dismissed their appeal, ending the First Nix Action. Dkt 16-5.

### III. *Second Nix Action:* **Plaintiffs File Another Complaint Based on the Same Facts in New York Federal Court, then Voluntarily Dismiss the Complaint**

Over a year later, in July 2016, Plaintiffs filed another action in New York federal court alleging, among other things, that Defendants violated New York and Florida state law by using "improper means and illegal conduct in order to hack and take down" DNA Sports Lab's YouTube, Facebook, and PayPal accounts. *See* Kobre Decl., **Ex. C** (Amended Complaint, *Neiman Nix et al, v. Major League Baseball et al.,* No. 16-cv-5604 (S.D.N.Y. Sept. 1, 2016), at ¶ 87); *see also id.* at ¶ 73 ("As a result of MLB interfering with DNA Sports Lab's social media and PayPal accounts, DNA Sports Lab experienced a huge decrease in online sales and monetary loss."). Plaintiffs' suit relied on conclusory allegations of complete diversity jurisdiction between the parties, but they failed to allege the citizenship of the parties. *See* Dkt. 15 at 6–7 (summarizing prior litigation). At a pre-motion conference, Plaintiffs admitted that diversity jurisdiction did not exist, but asked the court for a "discretionary measure" to hear the case. *See id.* The court explained that it lacked discretion to hear the case if it lacked subject-matter jurisdiction and gave Plaintiffs the opportunity to amend their complaint to correct the jurisdictional deficiency. *See id.* Instead, Plaintiffs voluntarily dismissed the Second Nix Action on November 3, 2016. Dkt. 16-13.

### IV. *Third Nix Action:* **Plaintiffs File Yet Another Complaint Based on the Same Facts in New York State Court; After Removal to Federal Court, this Court Dismisses Plaintiffs' CFAA Claim with Prejudice**

On November 28, 2016, Plaintiffs filed yet another action against MLB and related parties based on the same allegations, this time in New York state court. Dkt. 1-1. While the factual allegations in that complaint were substantively the same as Plaintiffs' previous actions, Plaintiffs included a new federal claim under the CFAA, 18 U.S.C. § 1030, based on Defendants' alleged "hacking" of Plaintiffs' PayPal, Facebook, and YouTube accounts. *Id.* at ¶¶ 142-154.

4

Defendants removed the action to this Court based on federal question jurisdiction over the federal CFAA claim and supplemental jurisdiction over Plaintiffs' state law claims. Plaintiffs then sought to remand the action through a voluntary dismissal of the CFAA claim. On July 6, 2017, this Court dismissed Plaintiffs' CFAA claim with prejudice and remanded Plaintiffs' remaining state law claims, noting that "Plaintiffs' failure to prosecute and their general inattentiveness to jurisdictional issues in other cases are very troubling." Dkt. 19.

After remand, Defendants moved to dismiss the complaint because Plaintiffs' claims were barred—by both the applicable statutes of limitations and by *res judicata*—and because Plaintiffs failed to state a claim. The court agreed, and dismissed the complaint because (1) Plaintiffs' tortious interference claim was barred by *res judicata*, and (2) MLB's allegedly defamatory statement was true and privileged.

After Plaintiffs moved to reargue the motion to dismiss, the court sanctioned them because the motion was "completely without merit in law," depended "on a misleading citation to evidence and arguments," and was "intended to prolong the resolution of this case and/or to harass [Defendants]." Kobre Decl., **Ex. D** (*Neiman Nix, et al. v. Major League Baseball, et al.*, Case No. 159953/2016, 2018 WL 6838756, at *4 (NY Sup. Ct., Dec. 31, 2018)). The court ultimately ordered Plaintiffs and their counsel to jointly and severally pay Defendants their reasonable attorney fees and costs of $40,554.93. *See* Kobre Decl., **Ex. E** (Order – Second Supplemental, *Neiman Nix et al. v. Major League Baseball et al.,* No. 159953/2016, at *3 (Sup. Ct. N.Y. Cnty. Dec. 3, 2019)).

### V.    *Fourth Nix Action:* Nix Sues 20 MLB Clubs for MLB's alleged "Hacking" of Plaintiffs' Online Accounts, then Voluntarily Dismisses His "Hacking" Claims

On April 2, 2018, Nix filed a new Florida state court lawsuit—this time *pro se*—against, among others, Kobre & Kim LLP and three of its attorneys (the "Kobre & Kim Defendants") for

5

their representation of MLB in Plaintiffs' previous lawsuits. On May 31, 2018, Nix amended the complaint to allege, among other things, that 20 MLB clubs were liable because MLB had illegally accessed Nix's PayPal account in violation of Florida's Computer Abuse and Data Recovery Act ("CADRA"). Nix later retained counsel and voluntarily dismissed his claims against many defendants, including the Kobre & Kim Defendants, and voluntarily dismissed all CADRA claims. Kobre Decl., **Ex. F** (Notice of Voluntary Dismissal *Without Prejudice*, *Nix v. Luhnow, et al.*, No. 18-003920-CA-50 (Fla. 15th Cir. Ct. Dec. 7, 2018)). That litigation is proceeding based on unrelated allegations against two MLB clubs and certain of their employees.

## VI. *Fifth Nix Action:* Plaintiffs File the Florida Lawsuit Based on the Same Alleged "Hacking" of their Online Accounts

Plaintiffs initiated their latest related litigation—the Florida Lawsuit—on January 25, 2019, alleging *for the fifth time* that MLB and its employees "hacked" into Plaintiffs' online accounts. Specifically, Plaintiffs again alleged that Defendants violated CADRA by engaging in "computer hacking" as part of MLB's "off-the-books" "black ops" campaign against Plaintiffs and their online accounts. Kobre Decl., **Ex. G** (Complaint, *Neiman Nix, et al. v. Major League Baseball*, No. 2019-002611-CA-01 (Fla. 11th Cir. Ct. Jan. 25, 2019), at ¶¶ 57–59, 78, 89). Defendants moved to dismiss because, among other reasons, CADRA cannot be applied retroactively to Plaintiffs' claims; Plaintiffs' claims were barred—by the applicable statute of limitations and *res judicata*; and the complaint failed to state a claim. After Defendants filed the motion, Plaintiffs conceded the complaint was deficient and the court entered an agreed order on May 14, 2019, granting Defendants' motion to dismiss and dismissing the complaint without prejudice. Kobre Decl., **Ex. H** (Order, *Neiman Nix, et al. v. Major League Baseball*, No. 2019-

6

002611-CA-01 (Fla. 11th Cir. Ct. May 14, 2019). Defendants' motion to recover their reasonable attorney fees under CADRA based on that dismissal remains pending.

Plaintiffs filed an amended complaint on June 20, 2019, repeating the same factual allegations but repackaging their CADRA claims as claims for invasion of privacy, misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"), and aiding and abetting a tortfeasor. Kobre Decl., **Ex. A**. Defendants moved to dismiss the amended complaint because Plaintiffs' allegations fail to state a claim and any claims are barred by the applicable statutes of limitations and by *res judicata* based on their multiple prior litigations. On December 12, 2019, the court dismissed all claims against Commissioner Manfred and former Commissioner Selig for lack of personal jurisdiction but declined to address Defendants' other defenses at the motion to dismiss stage. Kobre Decl., **Ex. I (**Order, *Neiman Nix, et al. v. Major League Baseball*, No. 2019-002611-CA-01 (Fla. 11th Cir. Ct. Dec. 12, 2019)). On January 14, 2020, the remaining Defendants filed an Answer and Affirmative Defenses to the Amended Complaint. Kobre Decl., **Ex. J (**Defendants' Answer and Affirmative Defenses to the Amended Complaint, *Neiman Nix, et al. v. Major League Baseball*, *et al.* No. 2019-002611-CA-01 (Fla. 11th Cir. Ct. Jan. 14, 2020)).

As a result of the COVID-19 crisis, the overburdened Florida state court recently issued several orders delaying hearing dates and legal deadlines. On March 13, 2020, the Florida state court issued COVID-19 Advisory #5, which suspended all legal time limits beginning March 16, 2020, for a period of two weeks ending on March 30, 2020. *See* Kobre Decl. **Ex. K**. On March 26, 2020, the Florida state court issued COVID-19 Advisory #12, which postponed all "non-mission critical court proceedings" and further suspended most court deadlines for over 30 days. *See* Kobre Decl. **Ex. L**. And just last week, the Florida state court issued Administrative Order No. 20-08,

which acknowledged that the "COVID-19 pandemic continues to have a massive effect upon the operations of the Eleventh Judicial Circuit system" and suspended any court deadlines falling before June 1, 2020, by a total of 80 days. *See* Kobre Decl., **Ex. M**. In light of the dynamic public health and financial crisis, further orders of a similar nature seem likely.

Despite those orders and the worsening COVID-19 crisis, Nix has continued his unrelenting harassment. On March 24, 2020, Plaintiffs served a First Request for Production of Documents itemizing 89 separate requests—the majority of which have little or no relevance to their claims. *See* Kobre Decl. **Ex. N**. On April 3, 2020, Plaintiffs also served their First Set of Interrogatories, similarly seeking information with little or no relevance to their claims. *See* Kobre Decl. **Ex. O**.

## ARGUMENT

### I. The Court may enjoin the Florida Lawsuit to protect its prior binding judgment.

The Court is authorized to enjoin the Florida litigation under The All Writs Act and relitigation exception to the Anti-Injunction Act, as well as under the Court's own inherent equitable authority to protect its judgments. The All Writs Act, 28 U.S.C. § 1651, authorizes a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdiction and agreeable to the usages and principles of law." To enjoin an action in state court, a federal court must satisfy one of the three exceptions to the Anti-Injunction Act, including "to protect or effectuate its judgments." 28 U.S.C. § 2283. "The authority of a United States court to issue an injunction 'to protect . . . its judgments' from further litigation in state courts is known as the 'relitigation exception' to the broad prohibition of the Anti-Injunction Act." *Smith v. Woosley*, 399 F.3d 428, 431 (2d Cir. 2005) (quoting 28 U.S.C. § 2283). In addition, federal courts also have the "inherent power to protect their own judgments from being undermined or vitiated by vexatious

8

litigation in other jurisdictions." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 124 (2d Cir. 2007).

The relitigation exception "authorizes an injunction to prevent state litigation of a claim or issue 'that previously was presented to and decided by the federal court.'" *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (quoting *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)); *see also Staffer v. Bouchard Transp. Co., Inc.*, 878 F.2d 638, 641 (2d Cir. 1989) ("[A] federal court may halt state litigation that might undermine some of the *res judicata* or collateral estoppel effects of a federal judgment.") (citing *Choo*, 486 U.S. at 147). "[T]he relitigation exception permits a preemptive strike that avoids the need to assert prior adjudication defenses in a state court when faced with claims that have already been rejected in a federal court." *Smith v. Woosley*, 399 F.3d 428, 434 (2d Cir. 2005); *see also In re Rezulin Prods. Liab. Litig.*, 223 F.R.D. 109, 120 (S.D.N.Y. 2004), *partially vacated on other grounds*, 2004 WL 1700618 (S.D.N.Y. July 27, 2004) (A court "is not required to stand idly by and hope that [another] court accords preclusive effect to its rulings before issuing an otherwise appropriate injunction."). While the scope of the relitigation exception is narrower than the doctrine of *res judicata* because *res judicata* applies to all claims that *could have been brought* in the prior litigation, *Staffer*, 878 F.2d at 643, the relitigation exception "does not permit [a] party to bring essentially the same claim as was previously brought . . . simply because it is cast in slightly different terms." *Hutton Const. Co., Inc. v. County of Rockland*, Nos. 87 Civ. 4027, 93 Civ. 2465, 1997 WL 291954, at *2 (S.D.N.Y. June 2, 1997).

The relitigation exception applies to prior federal dismissals with prejudice. "Because a dismissal with prejudice by order of the court is a judgment on the merits, . . . a federal court can enjoin a state court proceeding adjudicating an action dealing with the same transaction or occurrence that was the subject of the dismissed cause." *Brooks v. Barbour Energy Corp.*, 804

9

F.2d 1144, 1146 (10th Cir. 1986) (invoking the relitigation exception to enjoin the plaintiff's participation in an Oklahoma state court lawsuit based on "a voluntary dismissal with prejudice upon an order of the court" under Fed. R. Civ. P. 41(a)(2)); *see also, e.g.*, *Fitzgerald v. Alleghany Corp.*, 882 F. Supp. 1433, 1435 (S.D.N.Y. 1995) ("A dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(2), as occurred here, is a final judgment on the merits favorable to the defendant.") (citing *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986)); 9 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2367 (3d ed. 2008) ("A dismissal with prejudice, unless the court has made some other provision, is subject to the usual rules of res judicata and is effective not only on the immediate parties but also on their privies.").

The relitigation exception applies here because the Florida Litigation deals with the same nucleus of operative facts as the CFAA claim this Court dismissed *with prejudice*. *See Smith v. Woosley*, 399 F.3d 428, 434 n.8 (2d Cir. 2005) (noting that the relitigation exception applies to a subsequent claim that "arose from the same common nucleus of operative facts as the litigated claim"); *see also Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) ("In deciding whether a suit is barred by res judicata, it must first be determined that the second suit involves the same claim—or nucleus of operative fact—as the first suit.") (internal quotes omitted). In both actions, Plaintiffs accused MLB and its employees of engaging in a campaign of computer hacking to interfere with Plaintiffs' online and social media accounts. *Compare* Dkt. 1-1 at ¶ 96 (alleging that "MLB interfer[ed] with Plaintiffs and DNA Sports Lab's social media and PayPal accounts"), *with* Kobre Decl., **Ex. A**, Amended Compl. at ¶¶ 90-92 (alleging that MLB and its employees "hacked" into Plaintiffs' computer and PayPal account). In both actions, Plaintiffs allege that the "hacking" was carried out by Defendant Neil Boland, *compare* Dkt. 1-1, at ¶ 84 (alleging that "MLB's conduct in attacking DNA Sports Lab's social media accounts was undertaken by or at

10

the direction of Boland"), *with* Kobre Decl., **Ex. A** Amended Compl. at ¶ 73 (alleging that "Boland and/or one or more of his agents, operating remotely was able to gain entry into [Plaintiffs'] Computer"), from an IP address in Boca Raton, *compare* Dkt. 1-1 at ¶ 95 (describing an "instance of an illegal login to [Nix's] PayPal account" from Boca Raton), *with* Kobre Decl., **Ex. A**, Amended Compl. at ¶¶ 96-98 ("The documents obtained from PayPal reveal that the IP address . . . used to hack into Plaintiffs' PayPal Account was located in zip code 33481" in Boca Raton). Because the allegations in the Florida Litigation share the same nucleus of operative facts as the CFAA claim that this Court dismissed with prejudice, the Court may enjoin the Florida Litigation.

## II. The balance of the equities weighs strongly in favor of a permanent injunction to prevent further prosecution of Plaintiffs' vexatious and harassing litigation.

Once a court determines it has the authority to issue an injunction under the relitigation exception, "[t]he decision whether to issue an injunction remains subject to equitable considerations." *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (NRB), 2017 WL 6403087, at *10 (S.D.N.Y. Nov. 16, 2017). Such considerations include "principles of equity, comity, and federalism." *Wyly v. Weiss*, 697 F.3d 131, 144 (2d Cir. 2012). But "[t]o the extent that the impending state court suits were vexatious and harassing, our interest in preserving federalism and comity with the state courts is not significantly disturbed by the issuance of injunctive relief." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 337 (2d Cir. 1985). The equities in this matter strongly favor the issuance of an injunction against Plaintiffs.

### a. The interests of equity and comity support an injunction against Plaintiffs.

First, as discussed above, Plaintiffs have tried to circumvent this Court's order by recasting their CFAA claim first as a CADRA claim, and then as claims for invasion of privacy, misappropriation of trade secrets under the Florida Uniform Trade Secrets Act ("FUTSA"), and

11

aiding and abetting a tortfeasor. Courts find "little equity in allowing [a plaintiff] to take a mulligan, through duplicative litigation, on an issue that had been squarely teed up by [a court's previous] order." *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12 Civ. 9350 (NRB), 2017 WL 6403087, at *10 (S.D.N.Y. Nov. 16, 2017); *see also Wyly*, 697 F.3d at 144 (affirming injunction of further state court proceedings because district court had "legitimate concerns" that state court proceedings "might simply be an end-run around its prior decisions").

Second, the interests of federalism and comity weigh in favor of an injunction. "While comity requires respect for the ability of the state courts to decide the issue of *res judicata* properly, it also requires sympathy for their calendar problems and for the task that would confront them were this litigation to be imposed upon them." *Browning Debenture Holders' Comm. v. DASA Corp.*, 605 F.2d 35, 40 (2d Cir. 1978). Here, Florida's state courts have no significant interest in evaluating the merits of Defendants' *res judicata* argument based on a prior judgment by a federal court in New York—indeed, the Florida state court already delayed addressing the issue by declining to consider it at the motion to dismiss stage. In addition, because Florida requires all motions be set for a hearing and the current COVID-19 crisis has resulted in postponements of "non-mission critical court proceedings" and the suspension of most court deadlines in the Florida state court (with additional extensions appearing likely), the Florida court would likely be grateful for this Court's assistance. As is the case here, the federal court that initially decided the issue "is often in a better position to quickly appraise the merits of a preclusion argument regarding a complex suit that it has already adjudicated." *Wyly*, 697 F.3d at 144. This Court is best positioned to evaluate Defendants' arguments and protect the interests of comity.

### b. *Plaintiffs' long history of frivolous litigation supports an injunction.*

An injunction is also warranted because Plaintiffs' claims in the Florida Lawsuit are frivolous, consistent with their multi-year campaign of frivolous and harassing litigation against MLB and its employees. "It is well settled that, where a district court finds that an action is repetitious, baseless, or intended to harass, it may enjoin it in the exercise of its inherent equity power and pursuant to the All Writs Statute." *Browning Debenture Holders' Committee v. DASA Corp.*, 605 F.2d 35, 38 (2d Cir. 1978); *see also Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 124 (2d Cir. 2007) ("[Federal courts have] inherent power to protect their own judgments from being undermined or vitiated by vexatious litigation in other jurisdictions."); *Covanta Onondaga Ltd. v. Onandaga County Resource Recovery Agency*, 318 F.3d 392, 398 (2d Cir. 2003) (noting the "court's unquestioned authority to terminate and prevent the renewal of a protracted series of vexatious lawsuits filed by a litigant who is not deterred by the assertion of preclusion defenses in subsequent litigation").

Plaintiffs' long history of frivolous and harassing litigation is well-documented. Plaintiffs have consistently brought meritless claims against MLB and related parties, only to withdraw those claims when challenged—and after forcing Defendants to expend significant resources. *See* Dkt. 16-5; Dkt. 16-13; Kobre Decl., **Ex. E**. Plaintiffs have also consistently engaged in gamesmanship over the proper forum for their lawsuits, needlessly increasing the costs of litigation. In 2016, Plaintiffs filed suit in the Southern District of New York based on supposed diversity jurisdiction, then admitted that diversity jurisdiction did not exist. *See* Dkt. 15 at 6-7 (summarizing prior litigation). After the court gave Plaintiffs the opportunity to amend their complaint to correct the jurisdictional deficiency, Plaintiffs voluntarily dismissed the suit. *See* Dkt. 16-13. Plaintiffs then immediately initiated this litigation in New York Supreme Court and included a federal CFAA

claim in their complaint that could have cured the jurisdictional deficiency in their previously filed complaint. Dkt. 1-1. After Defendants removed the case to this Court—in light of *Plaintiffs'* prior choice of forum—and filed a pre-motion letter setting forth the complaint's deficiencies, the Court issued an order requiring Plaintiffs to either file a motion to remand or file "an amended complaint conforming to federal pleading standards." Dkt. 14. Plaintiffs then voluntarily dismissed their CFAA claim and moved to remand the case back to the New York Supreme Court. In this Court's order remanding the case to the New York Supreme Court, the Court observed that "Plaintiffs' failure to prosecute and their general inattentiveness to jurisdictional issues in other cases are very troubling." Dkt. 19. After remand, Plaintiffs' remaining claims were dismissed in their entirety. After Plaintiffs moved to reargue the motion to dismiss, the court sanctioned them because the motion was "completely without merit in law," depended "on a misleading citation to evidence and arguments," and was "intended to prolong the resolution of this case and/or to harass [Defendants]." *Nix, et al. v. Major League Baseball, et al.*, Case No. 159953/2016, 2018 WL 6838756, at *4 (NY Sup. Ct., Dec. 31, 2018). The court ultimately ordered Plaintiffs and their counsel to jointly and severally pay Defendants their reasonable attorney fees and costs of $40,554.93.

Similarly, in the Florida Lawsuit, Plaintiffs' initial complaint alleged violations of Florida's CADRA statute based on Defendants' alleged "computer hacking" conduct in 2013 and 2014. But CADRA took effect on October 1, 2015, and cannot apply retroactively. Despite being informed by Defendants that the complaint was baseless, Plaintiffs refused to withdraw their complaint, forcing Defendants to expend even more resources to defend against Plaintiffs' latest frivolous claims. But shortly after Defendants moved to dismiss based on the complaint's many incurable deficiencies, Defendants conceded the complaint was deficient and sought to dismiss the

14

complaint. On May 14, 2019, the Court entered an agreed order granting Defendants' motion to dismiss, dismissing the complaint without prejudice, and allowing Plaintiffs to file an amended complaint. Defendants' motion to recover their reasonable attorney fees based on that dismissal remains pending. The frivolous nature of the Florida Lawsuit, combined with Plaintiffs' long history of frivolous litigation, supports the issuance of an injunction against Plaintiffs.

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request that the Court enter an order permanently enjoining Plaintiffs Neiman Nix and DNA Sports Performance Lab, Inc. from further litigating their lawsuit against Defendants in the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.

Dated: April 17, 2020
      New York, New York

KOBRE & KIM LLP

By:  /s/ *Steven G. Kobre*
Steven G. Kobre
Lindsey Weiss Harris
800 Third Avenue
New York, New York 10022
Tel: +1 212 488 1200
Fax: +1 212 488 1220
steven.kobre@kobrekim.com
lindsey.weiss.harris@kobrekim.com

*Attorneys for Defendants Major League Baseball, Office of the Commissioner of Baseball, d/b/a Major League Baseball, Robert D. Manfred, Jr., Allan H. "Bud" Selig, Neil Boland, and Awilda Santana*