UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

NEIMAN NIX, *et al.*,

                              Plaintiffs,

     -v-

OFFICE OF THE COMMISSIONER OF
BASEBALL, d/b/a MAJOR LEAGUE
BASEBALL, *et al.*,

                              Defendants.

No. 17-cv-1241 (RJS)
OPINION & ORDER

RICHARD J. SULLIVAN, District Judge:

     Defendants Major League Baseball ("MLB"), Robert D. Manfred, Jr., Allan H. "Bud" Selig, Neil Boland, and Awilda Santana (collectively, "Defendants") seek a permanent injunction under the All Writs Act and the Anti-Injunction Act enjoining Plaintiffs Neiman Nix and DNA Sports Performance Lab, Inc. ("DNA Sports Lab") from litigating an action in Florida state court for alleged violations of Florida's Uniform Trade Secrets Act ("FUTSA"). (Doc. No. 21 at 1–2, 7.) For the reasons set forth below, the motion is DENIED.

## I. Background

     Nix, a current resident of Florida, played professional baseball within the Milwaukee Brewers and Cincinnati Reds organizations until 2003. (Doc. No. 22-1 ¶¶ 2, 15.) In 2006, Nix founded the American Baseball Institute, a player development academy based in Clearwater, Florida. (Doc. No. 1-1 ¶¶ 13–14, 16.) In 2012, Nix established DNA Sports Lab, a Florida corporation headquartered in Miami Beach, Florida, which Nix describes as "a state-of-the-art sports science facility for human performance." (Doc. No. 22-1 ¶ 21.) According to Nix, DNA

Sports Lab "specializes in the research and development and sale of natural substances to serve as a legal alternative to harmful performance enhancing drugs." (*Id*. ¶ 22.)

While the parties have an extensive history of litigation, which includes numerous suits in both Florida and New York, the Court discusses only those cases directly relevant to this motion. On November 9, 2016, Plaintiffs filed suit against Defendants in New York Supreme Court, alleging tortious interference with business relations, defamation, and violations of the federal Computer Fraud and Abuse Act ("CFAA"). (Doc. No. 1-1.) In support of the CFAA claim, Plaintiffs alleged that MLB "began hacking/attacking DNA Sports Lab's social media accounts," including PayPal, which "severely disrupt[ed] Nix's ability to do business." (*Id.* ¶ 79.) Plaintiffs also insisted that Defendants "hacked into and destroyed" Nix's former attorney's computer in retaliation for filing the complaint. (*Id.* ¶ 80.) On February 17, 2017, Defendants removed the case to federal Court on the basis of federal question jurisdiction over Plaintiffs' CFAA claim, while asserting supplemental jurisdiction over Plaintiffs' state law tort claims. *See* 28 U.S.C. §§ 1331, 1367(a), 1441(a). On February 27, 2017, the day the case was assigned to the Court's docket, the Court issued an order directing Plaintiffs to file either a motion to remand pursuant to 28 U.S.C. § 1447(c) or an amended complaint conforming to the pleading standards under Rule 8 of the Federal Rules of Civil Procedure. (Doc. No. 6.)

In response, Plaintiffs moved to voluntarily dismiss the CFAA claim pursuant to Federal Rule of Civil Procedure 41(a)(2) and to remand the remaining claims to state court pursuant to 28 U.S.C. § 1447. (Doc. No. 13.) They also submitted a proposed stipulation voluntarily dismissing their CFAA claim with prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). (Doc. No. 13-4.) On July 6, 2017, the Court granted both motions. (Doc. No. 19 at 1.) In doing so, the Court noted that because Defendants did not join the proposed stipulation, it had no legal

effect, since Rule 41(a)(1)(A)(ii) requires that a stipulation of dismissal be "signed by all parties who have appeared." (*Id.* at 4 (quoting Fed. R. Civ. P. 41(a)(l)(A)(ii)).) Nonetheless, the Court granted the motion under Rule 41(a)(2), which allows it to dismiss a complaint "upon such terms and conditions as the court deems proper," because Plaintiffs were willing to dismiss with prejudice and Defendants could not articulate any harms that they would suffer as a result. (*Id.* at 5 (quoting *Catanzano v. Wing*, 277 F.3d 99, 109 (2d Cir. 2001)).) On remand, the New York Supreme Court granted Defendants' motion to dismiss the complaint. (Doc. No. 21 at 5.)

On January 25, 2019, Plaintiffs brought a new action in Florida state court, alleging that MLB violated Florida's Computer Abuse and Data Recovery Act ("CADRA") by accessing Plaintiffs' PayPal account and computer. (Doc. No. 22-7 at 16–23.) Defendants moved to dismiss on several grounds – including that CADRA, which took effect in 2015, does not apply retroactively. (Doc. No. 21 at 6.) Based on an agreement among the parties, the state court granted the motion and dismissed the claim without prejudice. (Doc. No. 22-8.) Plaintiffs then filed an amended complaint alleging that Defendants violated FUTSA, again based on the alleged PayPal hacking incident. (Doc. No. 22-1 at 26–28.) Defendants once more moved to dismiss, arguing that the claim was time-barred and precluded under res judicata. (Doc. No. 21 at 7.) The Florida state court denied Defendants' motion in part, and most Defendants remain in that case. (Doc. No. 22-9.) Having lost their motion in Florida state court, Defendants now return to this Court – in an action that was closed more than three years ago – seeking an injunction to bar the Florida state court action pursuant to this Court's authority under the All Writs Act and the relitigation exception to the Anti-Injunction Act.

3

## II.  Discussion

The All Writs Act authorizes a federal court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  But this power is not boundless:  Under the Anti-Injunction Act, federal courts generally "may not grant an injunction to stay proceedings in a State court."  28 U.S.C. § 2283.  The Anti-Injunction Act's unmistakable message – indeed, its "core message" – is "one of respect for state courts," as the Act "broadly commands that those tribunals shall remain free from interference by federal courts."  *Smith v. Bayer Corp.*, 564 U.S. 299, 306 (2011) (internal quotation marks omitted).  Although the Anti-Injunction Act lists some exceptions to its broad command, these "exceptions are narrow and 'not to be enlarged by loose statutory construction.'"  *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988) (alteration adopted) (quoting *Atl. Coast Line R.R. Co. v. Bhd. of Locomotive Eng'rs*, 398 U.S. 281, 287 (1970)).

At issue here is the so-called relitigation exception to the Anti-Injunction Act, which authorizes federal courts to grant an injunction "to protect or effectuate its judgments."  28 U.S.C. § 2283.  While the relitigation exception is "designed to implement 'well-recognized concepts' of claim and issue preclusion," courts have "taken special care to keep it 'strict and narrow.'"  *Bayer*, 564 U.S. at 306 (quoting *Chick Kam Choo*, 486 U.S. at 147–48).  Indeed, "an essential prerequisite for applying the relitigation exception is that the claims or issues which the federal injunction insulates from litigation in state proceedings *actually have been decided by the federal court*."  *Chick Kam Choo*, 486 U.S. at 148 (emphasis added); *see also Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643 (2d Cir. 1989).

As a result, the relitigation exception is "more narrowly tailored than the doctrine of res judicata."  *Staffer*, 878 F.2d at 643.  It does "not permit[] . . . preclusion of claims that, while not

4

litigated, arose from the same common nucleus of operative facts as the litigated claim." *Smith v. Woosley*, 399 F.3d 428, 434 n.8 (2d Cir. 2005). Instead, the relitigation exception turns on what legal standards the federal court used as compared to the state court: If the legal standards differ, the two courts would not actually decide the same issue – meaning the relitigation exception does not apply, even if the action would be barred under the doctrine of res judicata. *Bayer*, 564 U.S. at 309–10.

That said, the relitigation exception may nevertheless apply "where collateral estoppel applies." *MLE Realty Assocs. v. Handler*, 192 F.3d 259, 262 (2d Cir. 1999); *see also Staffer*, 878 F.2d at 644 ("The district court, however, had the discretionary authority to enjoin the state court proceedings for jeopardizing the collateral estoppel effect of its judgment."). So even where a federal court may not enjoin a state action in its entirety, it may enjoin litigation of specific issues – but only when those issues were "actually litigated and resolved in a valid court determination essential to the prior judgment." *Wyly v. Weiss*, 697 F.3d 131, 141 (2d Cir. 2012) (internal quotation marks omitted); *see also Staffer*, 878 F.2d at 644.

Applying these principles here, it is clear that the Court did not actually decide any claims or issues that would permit it to issue an injunction. Defendants point primarily to principles of res judicata, arguing that an injunction is warranted because Plaintiffs' FUTSA claim merely "repackag[ed]" the CFAA claim that the Court dismissed with prejudice in 2017. (Doc. No. 21 at 7.) Specifically, Defendants contend that, because both the CFAA and FUTSA claims reference the alleged hacking incident, "the Florida Litigation deals with the same nucleus of operative facts as the CFAA claim" and therefore falls within the relitigation exception. (*Id.* at 10.) But the fact that claims may deal with the "same nucleus of operative facts" is simply irrelevant if the claims

were not actually decided in the prior litigation. *See Woosley*, 399 F.3d at 434 n.8; *Chick Kam Choo*, 486 U.S. at 148.

Here, the Court plainly did not actually decide the CFAA claim. It is true, as Defendants contend, that dismissal with prejudice technically constitutes a judgment "on the merits." *See, e.g.*, *Fitzgerald v. Alleghany Corp.*, 882 F. Supp. 1433, 1435 (S.D.N.Y. 1995) ("A dismissal with prejudice pursuant to Fed. R. Civ. P. 41(a)(2), as occurred here, is a final judgment on the merits favorable to the defendant." (citing *Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986)). But that does not mean the claim was actually decided for the purposes of the relitigation exception. Instead, the Court dismissed the CFAA action with prejudice because Plaintiffs expressed a willingness to do so, and the Court explicitly acknowledged that the remaining claims, which concerned the same facts, would be litigated in state court. (Doc. No. 19 at 5.) It further emphasized that the parties had not even begun discovery in federal court, so Defendants would not be significantly prejudiced by remand. (*Id.* at 7.) Accordingly, while the Court's 2017 dismissal may have res judicata implications, it does not allow the Court to issue an injunction under the relitigation exception.

And even if the Court had actually decided the federal CFAA claim, an injunction would still be inappropriate because it did not decide the state law FUTSA claim. Again, the proper inquiry under the relitigation exception is not whether Plaintiffs could have brought this claim earlier, but rather whether the claims employ the same legal standards. FUTSA and CFAA clearly do not. For example, to succeed on their CFAA claim, Plaintiffs would have to prove more than $5,000 in "economic damages" within a single year and show that Defendants used a computer "in or affecting interstate or foreign commerce or communication," 18 U.S.C. § 1030(c)(4)(A)(i)(I), (e)(2)(B), (g), whereas neither showing is required for an FUTSA claim, Fla.

6

Stat. § 688.801–09.  At bottom, the Court did not actually decide the CFAA claim, much less the FUTSA claim.

Nor did the Court actually decide any subsidiary facts or issues that could be considered "essential to the prior judgment" under the collateral estoppel doctrine.  *Wyly*, 697 F.3d at 141.  When a judgment is "unaccompanied by findings," it does "not bind the parties on any issue . . . which might arise in connection with another cause of action."  *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327 (1955); *see also Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 289 (2d Cir. 2002).  In dismissing the case, the Court did not make any specific findings regarding the issues or facts underlying Plaintiffs' case.  In fact, the Court presumed all non-jurisdictional facts in Plaintiffs' complaint to be true.  (Doc. No. 19 at 2 n.1.)  Therefore, principles of collateral estoppel also do not merit an injunction under the relitigation exception.

In sum, the Court plainly lacks authority to enjoin the litigation of Plaintiffs' state law claim or any specific issues relevant to that case.  Nothing was sufficiently *litigated* in this Court such that the Court could enjoin the *relitigation* of it.  The Court therefore declines to address whether, even if it had the power to issue an injunction, it would exercise its discretion to do so in this case.  *See Staffer*, 878 F.2d at 644 (affirming that the "injunction of state court proceedings . . . is discretionary").  Instead, the state court in Florida was the proper forum to decide Defendants' res judicata arguments.

### III.  Conclusion

Although Defendants' frustration with Plaintiffs' vexatious litigation is understandable, it cannot justify the relief sought here.  Accordingly, for the reasons set forth above, IT IS HEREBY

7

ORDERED that Defendants' motion for an injunction is DENIED. The Clerk is respectfully directed to terminate the motion pending at document number 20.

SO ORDERED.

Dated:    November 4, 2020
          New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation